UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AZIZ U. REHMAN, ) | |
| ) | |
| **Plaintiff and** ) | |
| **Counter-Defendant,** ) | |
| ) | |
| v. ) | No. 3:10 CV 220 |
| ) | |
| LIAQAT A. ANJUM and ) | |
| SAMINA IFTIKHAR, ) | |
| ) | |
| **Defendants and** ) | |
| **Counter-Claimants.** ) | |

<u>OPINION and ORDER</u>

I.      BACKGROUND

As explained in the court's order on defendants' first motion for partial summary

judgment, this case arises out of a dispute between plaintiff Aziz U. Rehman

("plaintiff"), who lives in Niles, Michigan, and his sister and brother-in-law, Samina

Iftikhar and Liaqat A. Anjum ("defendants"), who live in Qatar. In his complaint,

plaintiff contended that defendants entered into an oral agreement with him to file a

lawsuit against a third party, Dr. Shaukat Ali Chaudhry, and then split the proceeds of

that litigation with plaintiff. (Compl., DE # 1 at 2.) Plaintiff further contended that

Anjum signed a document (the "Litigation Agreement," DE # 37-2 at 3), which

memorialized the parties' alleged oral agreement to form the partnership. (Compl., DE

# 1 at 2.) Plaintiff claims that he also lent Anjum and/or the partnership $30,000 and

$81,000, but has not been repaid those amounts of money. (*Id.* at 12.)

Defendants contend that they did not enter into any agreement to form a partnership with plaintiff, to file suit against Chaudhry, or to split any profits of the litigation with plaintiff. (Anjum's Aff. ¶¶ 3, 4, 7, DE # 37-2 at 1; Iftikhar's Aff. ¶¶ 3, 4, 7, DE # 37-3 at 1.) Defendants further contend that Anjum never signed the Litigation Agreement (DE # 37-2 at 1, Anjum's Aff. ¶ 8), and argue that the signature that appears on the Agreement was forged.

Rather, defendants contend that they signed limited powers of attorney on February 23, 2008 (Anjum P.O.A., DE # 42-2 at 5-6; Iftikhar P.O.A., DE # 42-3 at 5-6), granting plaintiff the power to represent them in a number of matters, including the lawsuit against Chaudhry. (Anjum Supp. Aff. ¶ 2, DE # 42-2 at 1; Iftikhar Supp. Aff. ¶ 2, DE # 42-3 at 1.) Defendants further contend that on May 28, 2009, they revoked the February 23, 2008, powers of attorney and granted plaintiff more limited authority by executing new powers of attorney. (Anjum & Iftikhar 2d P.O.A., DE # 42-2 at 7-10; Anjum Supp. Aff. ¶ 5, DE # 42-2 at 1; Iftikhar Supp. Aff. ¶ 5, DE # 42-3 at 1.) Defendants further contend that, on June 14, 2009, they revoked the May 28, 2009, powers of attorney because plaintiff had demanded that defendants give him half of the proceeds of the litigation against Chaudhry. (Anjum Supp. Aff. ¶ 6, DE # 42-2 at 2; Iftikhar Supp. Aff. ¶ 6, DE # 42-3 at 2.)

Defendants further assert that, despite this revocation, plaintiff purported to assign their interests in one of their companies to Chaudhry for $40,000 each (or $80,000 total), on June 17, 2009 (Assignment, DE # 42-2 at 12-13), in order to settle the lawsuit

against Chaudhry. (Anjum Supp. Aff. ¶ 9, DE # 42-2 at 2,; Iftikhar Supp. Aff. ¶ 9, DE

# 42-3 at 2.) Chaudhry apparently accepted the assignment (Acceptances, DE # 42-2 at

14-15), and issued a check to plaintiff for $80,000 (Check, DE # 42-2 at 20). According to

defendants, plaintiff is still in possession of the $80,000. (Anjum Supp. Aff. ¶ 10, DE

# 42-2 at 2; Iftikhar Supp. Aff. ¶ 10, DE # 42-3 at 2.) According to defendants, it was not

until December of 2009 that they learned of the "Litigation Agreement," which contains

what they claim is the forged signature of Anjum. (Anjum Supp. Aff. ¶ 11, DE # 42-2 at

3; Iftikhar Supp. Aff. ¶ 11, DE # 42-3 at 3.)

On April 30, 2010, plaintiff filed a fourteen-count complaint against defendants

alleging, amongst other things, defendants' failure to abide by the Litigation Agreement

and repay money owed. (Compl., DE # 1.) Defendants filed a Counterclaim, seeking a

declaration that the Litigation Agreement is invalid (Count I), and alleging breach of

fiduciary duty (Count II), fraud (Count III), and forgery (Count IV). (DE # 6.) On

February 28, 2012, defendants moved for partial summary judgment. (DE # 37.) Plaintiff

did not respond to the motion. The court granted the motion, which disposed of all of

plaintiff's claims, except the claims of money lent (Count VIII), and money paid (Count

IX), which the motion for partial summary judgment did not address. (DE # 41.)

Defendants have, again, moved for partial summary judgment, this time on some

of the counts contained in their own Counterclaim. (DE # 43.)[1] As was the case with

defendants' first motion for partial summary judgment, plaintiff did not respond to the

present motion. Defendants have also filed a motion to dismiss plaintiff's two

remaining claims against them due to lack of prosecution. (DE # 45.) Plaintiff has not

responded to this motion either. Defendants' motions are addressed in turn below.

II.      ANALYSIS

     A.      **Defendants' Motion for Partial Summary Judgment**

Defendants have moved for partial summary judgment pursuant to FEDERAL

RULE OF CIVIL PROCEDURE 56. "[S]ummary judgment is appropriate–in fact, is

mandated–where there are no disputed issues of material fact and the movant must

prevail as a matter of law. In other words, the record must reveal that no reasonable

jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry.*

*Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). Where, as

in this case, the movants bear the burden of proof, the movants "must show that the

evidence . . . is 'so one-sided that . . . [the movants] must prevail as a matter of law'" in

order to obtain summary judgment in their favor. *Reserve Supply Corp. v. Owens-Corning*

*Fiberglass Corp.,* 971 F.2d 37, 42 (7th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.,*

---

[1] Though plaintiff was initially represented by counsel, he was proceeding *pro se*
by the time defendants filed their second motion for partial summary judgment.
Accordingly, defendants sent plaintiff the notice of motion for summary judgment that
this district requires be mailed to *pro se* litigants. (DE # 43.)

477 U.S. 242, 251-52 (1986)); *Addicks Servs., Inc., v. GGP-Bridgeland, LP,* 596 F.3d 286, 293

(5th Cir. 2010) (where movant also bears burden of proof, "movant must establish

beyond peradventure" all essential elements in order to warrant judgment in his

favor").[2]

Because plaintiff failed to file a response to defendants' motion for summary

judgment, defendants are entitled to summary ruling on the motion – that is, a ruling

without the benefit of plaintiff's response. However, plaintiff's failure to respond does

not automatically result in summary judgment for defendants. *Wienco, Inc. v. Katahn*

*Assoc., Inc.,* 965 F.2d 565, 568 (7th Cir. 1992). Rather, the court must still "make the

further finding that given the undisputed facts, summary judgment is proper as a

matter of law." *Id.* Accordingly, the court's task will be to examine the factual record in

this case to determine whether defendants have met their burden of demonstrating a

lack of genuine issues of material fact warranting summary judgment in their favor.

### 1.   Counterclaim Count I: Declaratory Judgment

Defendants seek summary judgment as to Count I of their Counterclaim, in

which they request a declaration that the Litigation Agreement is not valid. A meeting

---

[2] Where the movant does not bear the burden of proof at trial, the oft-quoted rule of *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986), which involves the shifting of burdens between the movant and non-movant, applies. In this case, defendants have moved for summary judgment on their own Counterclaim, on which they bear the burden of proof, so the only summary judgment standard that is necessary to apply is the one set forth in *Reserve Supply*; the burden-shifting standard of *Celotex* "is inapplicable." *Reserve Supply,* 971 F.2d at 42.

of the minds is a necessary element of any contract. *Zimmerman v. McColley,* 826 N.E.2d

71, 77 (Ind. Ct. App. 2005). The only evidence in the record relevant to the Litigation

Agreement is a copy of the purported agreement (Litigation Agreement, DE # 37-2 at 3)

and Anjum's affidavits, in which he attests that his signature on the document is forged

and that he never entered into any agreements and/or promises with plaintiff in

connection with the Chaudhry litigation. (Anjum Aff. ¶ 8, DE # 37-2 at 1; Anjum Supp.

Aff. ¶ 11, DE # 42-2 at 3.) Plaintiff has provided no arguments nor any evidence

regarding the legitimacy of the signature or the existence of an agreement between

himself and Anjum. Accordingly, summary judgment for defendants is appropriate as

to Count I of their Counterclaim, in the form of a declaratory judgment that the

purported "Litigation Agreement" is not a valid contract.

> 2.      *Counterclaim Count II: Breach of Fiduciary Duty*

Defendants seek summary judgment as to Count II of their Counterclaim, which

alleges that plaintiff breached his fiduciary duties to defendants as their attorney-in-

fact. In this case, defendants claim that plaintiff breached his fiduciary duties to them

by: (1) negotiating a settlement of Anjum and Iftikhar's interest in the litigation with

Chaudhry without their knowledge after his grant of authority had been revoked; (2)

assigning their interests in a company to Chaudhry in furtherance of this purported

settlement; (3) disposing of these interests for a fraction of their acknowledged value; (4)

attempting to retain the proceeds from the assignment; and (5) proffering a bogus

Litigation Agreement to support the existence of certain alleged promises between the parties.

The creation of a power of attorney creates a fiduciary relationship between the parties. *Villanella v. Godbey*, 632 N.E.2d 786, 790 (Ind. Ct. App. 1994). However, when a power of attorney is revoked, the fiduciary relationship between the parties ceases to exist. *Meyer v. Wright,* 854 N.E.2d 57, 61 n.2 (Ind. Ct. App. 2006). In this case, defendants argue that they revoked the May 28, 2009, power of attorney on June 14, 2009, before all of the purported fiduciary breaches occurred. Accordingly, defendants' own argument does not support their claim that a fiduciary relationship was in place at the time of the alleged breaches, and summary judgment is not appropriate as to Count II of defendants' Counterclaim.

3.     *Counterclaim Count IV: Forgery*

Defendants also seek summary judgment as to Count IV of their Counterclaim, which alleges that plaintiff engaged in forgery. The Indiana criminal code provides that "[a] person who, with intent to defraud, makes, utters, or possesses a written instrument in such a manner that it purports to have been made . . . by another person . . . commits forgery, a Class C felony." IND. CODE § 35-43-5-2(b). The Indiana Crime Victims Act allows victims of certain crimes, such as forgery, to recover in a civil action the pecuniary loss suffered as a result of the crime. IND. CODE § 34-24-3-1. Notably, "a criminal conviction is not a condition precedent to recovery." *White v. Ind. Realty Assocs. II*, 555 N.E.2d 454, 456 (Ind. 1990).

Anjum has attested via affidavits that his signature on the purported Litigation

Agreement is not his, and that he never entered into any agreements with plaintiff in

connection with the Litigation. (Anjum Aff. ¶ 8, DE # 37-2 at 1; Anjum's Supp. Aff. ¶ 11,

DE # 42-2 at 3.) Plaintiff has not contested these attestations in any way or offered any

evidence on this point. Accordingly, summary judgment for defendants is appropriate

on their claim for forgery.

4.      *Damages on Counterclaim*

In their memorandum in support of the present motion, defendants make a half-

hearted attempt to prove the damages to which they claim they are entitled with regard

to their forgery claim.[3] Defendants blanketly claim that they are entitled to $24,114, for

fees and costs paid to their current counsel "to address the forgery," and $20,000 for

travel-related expenses to and from Pakistan. (DE # 44 at 9.) Defendants further claim

that the sum of these two amounts should be trebled pursuant to IND. CODE § 34-24-3-

1(1). Finally, defendants request $63,222 for fees and costs paid to their current counsel

"in connection with the forged Litigation Agreement" pursuant to IND. CODE § 34-24-3-

1(2 & 3). (DE # 44 at 9.)

There are numerous problems with defendants' attempt to prove damages. First,

attorneys' fees are not generally recoverable as compensatory damages under Indiana

---

[3] Defendants actually seek damages for both their forgery claim (Count IV) and their breach of fiduciary duty claim (Count II). Since the court only granted summary judgment herein on the forgery claim, its comments on damages are confined accordingly. The court notes, however, that the same issues plague defendants' requests for damages related to both claims.

law; a rare exception to this rule is the "third party litigation exception," which permits the recovery of attorneys' fees when an opponent's wrongdoing caused a claimant to become involved in litigation *with a third party*. *Kinsel v. Schoen,* 934 N.E.2d 133, 141 (Ind. Ct. App. 2010). Defendants argue that they paid in excess of $24,000 in attorneys' fees and costs "to address the forgery," but it is unclear what legal disputes these fees related to and whether they involved third parties. If the fees were paid for advice regarding litigation (or potential litigation) *involving plaintiff*, the fees are unrecoverable as compensatory damages. Itemized statements regarding what work was actually done by attorneys regarding specific legal matters is necessary to determine whether the claimed $24,114 is recoverable.

Second, defendants can only recover for damages proximately caused by plaintiff's wrongdoing. IND. CODE § 34-24-3-1 (allowing damages for any person who "suffers a pecuniary loss *as a result of* a violation") (emphasis added); *Obremski v. Henderson,* 497 N.E.2d 909, 910-11 (Ind. 1986) (requiring proximate cause for Crime Victims Act violation, then codified at IND. CODE § 34-4-30-1). However, defendants fail to adequately explain how any of the claimed compensatory damages were proximately caused by plaintiff's act of forgery. Specifically, defendants do not provide sufficient proof regarding how plaintiff's forgery caused them to incur $20,000 in nondescript "travel-related expenses," nor do they attempt to prove why the forgery caused them to expend over $24,000 in payments to attorneys.

Third, defendants only supplied their own personal affidavits in support of their claimed damages. To prove the amount of damages, conclusory allegations in an affidavit are generally insufficient. *See e360 Insight v. The Spamhaus Project,* 500 F.3d 594, 603 (7th Cir. 2007). Without proper documentation such as a receipt or, in the case of the claimed attorneys' fees, an itemized bill, the court will not grant defendants' request for tens of thousands of dollars in purported damages.

Fourth, it is unclear whether defendants are entitled to the $63,222 they claim they paid in attorneys' fees "in connection with the forged Litigation Agreement." (DE # 44 at 9.) Generally, Indiana follows the "American Rule," which requires each party to pay his or her own attorneys' fees. *Delgado v. Boyles,* 922 N.E.2d 1267, 1270 (Ind. Ct. App. 2010). The Indiana Crime Victims Act has created a statutory exception to this general rule, permitting recovery of reasonable attorneys' fees associated with civil actions related to crimes such as forgery. IND. CODE § 34-24-3-1. However, defendants have failed to demonstrate how defendants' request for  $63,222 paid to attorneys "in connection with the forged Litigation Agreement" is different from the $24,114 paid to attorneys "to address the forgery," which defendants seek as compensatory damages. Further, while defendants suggest that $63,222 was paid to attorneys "following the inception of the action on April 30, 2010," it was *plaintiff's complaint* that was filed on April 30, 2010, not *defendants' counterclaim for forgery,* which was not filed until June 23, 2010. This distinction is important, as only the forgery counterclaim is relevant to the determination of attorneys' fees under IND. CODE § 34-24-3-1. Without an itemized

statement regarding what work was done by attorneys with regard to which claims, it is not possible to determine whether the claimed fees actually paid for attorney work product *related to the forgery claim,* as opposed to the prosecution or defense of some other claim, nor is it possible to determine whether the claimed fees are reasonable. For these reasons, defendants' motion for summary judgment is denied as to damages.

### B. Defendants' Motion to Dismiss for Failure to Prosecute

Only two of plaintiff's claims remain in this case: the claims for "money lent" and "money paid" (Counts VIII and IX). Defendants have now moved to dismiss these claims for lack of prosecution, citing plaintiff's failure to take any action in these proceedings since October of 2011. (DE # 45.) As the court has already explained, plaintiff failed to respond to this motion.

Though plaintiff has not responded to either of defendants' motions for partial summary judgment, nor defendants' motion to dismiss for lack of prosecution, he was not necessarily required to, and the court cannot necessarily dismiss his claims solely due to his inaction in this regard. *See Moore v. Hallisy,* No. 98-2211, 1999 WL 560619, at *2 (7th Cir. July 28, 1999) (unpublished) (district court erred in dismissing plaintiff's case for failure to prosecute due to plaintiff's failure to respond to motion for summary judgment).

However, the fact that plaintiff has not responded to three of defendants' motions and has not taken any action at all in this case in over a-year-and-a-half does make the court wonder whether plaintiff has abandoned this litigation. If so, his claims

should be dismissed under RULE 41(b). *Washington v. Walker,* 734 F.2d 1237, 1238 (7th Cir. 1984) ("'[F]ailure to prosecute' under [RULE 41(b)] does not mean that the plaintiff must have taken any positive steps to delay the trial or prevent it from being reached by the regular machinery of the court. It is quite sufficient if he does nothing, knowing that until something is done there will be no trial.").

But before the court may dismiss plaintiff's claims for lack of prosecution, it must provide plaintiff with due warning. *Ball v. City of Chi.,* 2 F.3d 752, 755 (7th Cir. 1993). "'Due warning' need not be repeated warnings and need not be formalized in a rule to show cause. . . . But there should be an explicit warning in every case." *Id.* Accordingly, the court now orders plaintiff to file by July 26, 2013, a status report regarding whether he intends to pursue Counts VIII and IX of his complaint. Failure to file such a report will be construed as abandonment of these claims, and plaintiff's cause of action will be dismissed, with prejudice, for failure to prosecute.

## III.   CONCLUSION

This litigation has been pending for over three years, with numerous stops and starts. Plaintiff has virtually disappeared from this litigation, and defendants have litigated this case in a slow, piecemeal fashion. For these reasons, and to prevent further delay, the court orders the following:

(1) Defendants' motion for partial summary judgment (DE # 42) is **GRANTED** as to liability on Counts I (declaratory judgment) and IV (forgery) of the Counterclaim,; **DENIED** as to liability on Count II (breach of fiduciary duty) of the Counterclaim; and **DENIED** as to damages. Because claims remain pending in this case, the court withholds entry of final judgment.

(2) In light of the court's analysis of Count II of the Counterclaim (breach of fiduciary duty), *supra* pp. 6-7, the court now moves, *sua sponte*, for summary judgment on this claim. Defendants are hereby **ORDERED** to file a response by **July 29, 2013**, setting forth the reasons why summary judgment on this claim should not be granted for plaintiff. Should plaintiff wish to file a reply to defendants' response, he must do so by **August 12, 2013**. (Alternatively, if defendants choose to voluntarily dismiss this claim pursuant to FEDERAL RULE OF CIVIL PROCEDURE 41(a), the deadlines in this paragraph will be vacated.)

(3) In a footnote in their memorandum supporting their most recent motion for partial summary judgment, defendants expressed an interest in dismissing, without prejudice, Count III of their Counterclaim, which alleges fraud. (DE # 44 at 10 n.2.) However, no formal motion has been made, so the court is unable to take action with regard to this claim. The court requests that, **by July 29, 2013**, defendants advise the court as to whether they intend to seek voluntary dismissal of the claim.

(4) With respect to defendants' claims, the issue of damages remains. Defendants are **GRANTED** until **July 29, 2013,** to file a third motion for partial summary judgment, **limited to the issue of damages**.

(5) The court **ORDERS plaintiff Aziz U. Rehman** to file, by **July 29, 2013**, a status report regarding whether he intends to pursue Counts VIII and IX of his complaint. In light of plaintiff's failure to participate meaningfully in this litigation for over 18 months, failure to file such a report will be construed as abandonment of these claims, and plaintiff's cause of action **will be dismissed, with prejudice**, for failure to prosecute.

                                    **SO ORDERED.**


        Date: July 1, 2013

                                    s/James T. Moody_____
                                    JUDGE JAMES T. MOODY
                                    UNITED STATES DISTRICT COURT